**Allen F. KENFIELD, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–1968.

United States Court of Appeals, Tenth Circuit.

Feb. 10, 1986.

Laurie A. Snyder, Atty., Tax Div. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Gilbert S. Rothenberg, Attys., Tax Div., with her on brief, Robert N. Miller, U.S. Atty., Denver, Colo., of counsel), Washington, D.C., for defendant-appellant.

Frank M. Cavanaugh, Evergreen, Colo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and SEAY, District Judge.*

LOGAN, Circuit Judge.

This is a federal income tax case. At issue is whether an ex-husband may be taxed on all the income of a partnership interest divided in a Colorado divorce.

Plaintiff Allen Kenfield was a partner in a two-person partnership engaged in land sales. In November 1977, while still a partner, Kenfield was divorced from his wife. The Colorado court granting the divorce held that Kenfield's partnership interest was marital property, whose value was to be divided between the spouses. See Colo.Rev.Stat. § 14–10–113(3) (1973).

The Colorado court found, however, that the value of the partnership interest was not capable of "realistic or reasonable" appraisal. It therefore awarded the wife fifty percent of all future "net proceeds received" by Kenfield from the partnership.[1] Kenfield appealed this award to the Colorado Court of Appeals, complaining that it awarded his ex-wife a future interest in property Kenfield did not own. The appellate court affirmed the settlement, and in its opinion stated that the trial court had given Kenfield "full control over the asset, with the wife's only participation being the right to receive half of his net after stated deductions.... Decisions on retaining or selling, or investing or not investing additional capital, are exclusively his to make. He is in no position to complain." R. I, 62.

The partnership continued to function after the divorce in the same manner as it did before. In 1977 the partnership made substantial profits, but Kenfield did not withdraw any and therefore distributed nothing to his ex-wife.[2] The partnership tax return listed Kenfield as a fifty percent partner, and he initially paid the income tax due on that full share of the 1977 partnership profits, according to normal "pass-through" partnership taxation rules. See I.R.C. §§ 701–704. Kenfield, however, then filed an amended return and claimed a refund, asserting that he should have paid tax on only half of these profits. He contended the rest should have been taxed to his ex-wife.

The Internal Revenue Service (IRS) denied the refund,[3] and Kenfield sued in district court to obtain it. The district court granted Kenfield summary judgment on this issue. The government now appeals and we affirm.

The key to properly deciding this case is *Imel v. United States*, 523 F.2d 853 (10th Cir.1975). There a husband transferred half of his appreciated stock holdings in several close corporations to his wife, pursuant to a Colorado divorce settlement. The IRS claimed that the transfers were sales or exchanges under I.R.C. § 1001(c),

* Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

1. The divorce decree provided:
   "The parties shall divide equally the net proceeds received by the Respondent [Kenfield] from Kenfield-Duncan Joint Venture after deduction of monies paid on promissory notes arising out of joint venture purposes, costs and expenses incurred in the business of the joint venture, the repayment of promissory notes to the other joint venturer, James Duncan, in the amount of $21,000.00 plus interest until paid, and any capital contributions made by the Respondent to the joint venture subsequent to November 21, 1977. The Petitioner [the wife] shall be entitled to a full accounting of the joint venture from the Respondent and shall be allowed access to the books and records of the joint venture for inspection and copying at reasonable times not to exceed twice per year."
   R.I, 58.

2. In each of three subsequent years, Kenfield again took none of the partnership profits out of the partnership. In 1980 the ex-wife agreed to assign her interest in partnership "proceeds" back to Kenfield in exchange for a house and $40,000. None of these later events are at issue in the present case.

3. The IRS has issued a deficiency notice for 1977 against the ex-wife to protect its interest in collecting taxes. She has a case pending in Tax Court challenging this deficiency.

requiring the husband to pay a capital gains tax on the stocks' appreciation. The husband argued that the settlement was only a division of property between marital coowners, and thus nontaxable.

Colorado has never been a community property state. *See In re Marriage of Ellis*, 36 Colo.App. 234, 538 P.2d 1347, 1349 (1975), *aff'd*, 191 Colo. 317, 552 P.2d 506 (1976). But it does recognize rights of each spouse in "marital property" upon divorce. *See* Colo.Rev.Stat. § 14–10–113(3) (1973). The federal district court, during the trial portion of *Imel*, was uncertain how to characterize a spouse's state law rights in such marital property, and it certified the question to the Colorado Supreme Court. That court responded that marital property was "a species of common ownership" which "vested" at the time of the filing of the divorce (and thus before the actual court-ordered or court-approved transfer). *See In re Questions Submitted by the United States District Court*, 184 Colo. 1, 517 P.2d 1331, 1334 (1974).

On appeal we applied this Colorado Supreme Court pronouncement to determine the income tax controversy. *Imel*, 523 F.2d at 855–57. We stated that state law created property rights and that federal law determined only how these rights would be taxed. *Id.* at 855.[4] We held that the Imels' property settlement must therefore be considered only a division of property between marital coowners, and not a taxable event. *Id.* at 857.[5]

▪ The instant case may appropriately be called "son of *Imel.*" The transfer here to the ex-wife of a right to fifty percent of partnership "net proceeds" gave her ownership of (1) half of Kenfield's right to the 1977 pre-divorce partnership income and (2) half of Kenfield's partnership interest. Under *Imel* the first transfer is a division between marital coowners. The right to half of Kenfield's share of the 1977 pre-divorce partnership income therefore only formally assigned to his ex-wife what in theory she already had.[6] Kenfield thus did not own this income and is not taxable on it.[7]

After the settlement, Kenfield did not own the asset that produced his ex-wife's share of the 1977 post-divorce income, i.e., his ex-wife's half of the partnership interest. Kenfield thus also is not taxable on the partnership income earned by that asset.

The government argues that the ex-wife's mere right to half of Kenfield's share of "net proceeds" of the partnership,

---

**4.** *See Morgan v. Commissioner*, 309 U.S. 78, 80, 60 S.Ct. 424, 425, 84 L.Ed. 1035 (1940) (general rule stated); *see also McCarty v. Hollis*, 120 F.2d 540, 542 (10th Cir.1941) (domestic relations belongs exclusively to the states).

**5.** The problem of income recognition after transfers of appreciated property between spouses who were being divorced was a controversial issue for many years. *See, e.g., United States v. Davis*, 370 U.S. 65, 70–71, 82 S.Ct. 1190, 1193, 8 L.Ed.2d 335 (1962) (discussion of problem; Delaware marital property law held not to set up coowner division defeating potential taxation); *His, Hers or Theirs? Federal Income Taxation of Divorce Property Settlements* ¶¶ 301–305 (Standard Federal Tax Reporter (CCH), Extra Edition Number 30, June 28, 1983).

Effective for transfers after July 18, 1984, no gain or loss is recognized by a taxpayer assigning appreciated property in a divorce settlement. *See* I.R.C. § 1041. This new Code section overrules the narrow holding of *Davis* and confirms the narrow holding of *Imel* that the appreciation will not be taxed to the transferor.

It does not treat the "coownership" issue involved in the instant case, however, in which taxation of appreciation is not an issue.

**6.** A divorce settlement transfer of income yet to be received—here the pre-divorce partnership income—is quite distinct from a simple transfer of property in a divorce settlement. *See Richard P. Schulze, Jr.*, 46 T.C.M. (CCH) 143, 145 (May 12, 1983) (divorce-related assignment from husband to wife of pending arbitration award is effective to make wife, not husband, taxable on ultimate award).

**7.** Had this been a sale of a portion of the partnership interest, all distributed and undistributed partnership income earned before the sale would be attributed to the seller of the interest. I.R.C. § 706(d); Treas.Reg. § 1.706–1(c)(4) (1973). Partnership income earned after the sale would be attributable to the buyer. *Id.* Our conclusion that the settlement decree in the present case involved only a division between marital coowners, and not a "sale or exchange," precludes application of this provision.

enforceable only when the partnership actually distributed such proceeds, cannot properly be called an "ownership" interest at all. It asserts that Kenfield retained "ownership" of the partnership interest, and that only he can be taxed on the income that it generated. In answering, we start again with the rule that property rights are created by, and exist under, state law. *See Morgan v. Commissioner*, 309 U.S. at 80, 60 S.Ct. at 425; *Imel*, 523 F.2d at 855. Here the ex-wife received rights against the partnership interest under a Colorado divorce decree. What property rights did the state court intend to create?

The Colorado court held that Kenfield's partnership interest was marital property. Under Colorado law, such marital property is to be "divided." *See* Colo.Rev.Stat. § 14–10–113 (1973); *In re Marriage of Gehret*, 41 Colo.App. 162, 580 P.2d 1275, 1277 (1978) (court must obey statutory command). In dividing the marital property, the court could have given equivalent value, however; it need not give half of the property itself. *See, e.g., In re Marriage of Warrington*, 44 Colo.App. 294, 616 P.2d 177, 179 (1980) (actual division is equitable and discretionary; example of court assigning values to assets and then dividing values). The Colorado court held here that the value of Kenfield's partnership interest was too indeterminate to calculate fairly and divide. Therefore the purpose of the court's actual decree was to adopt the apparent alternative—to divide the asset itself.

The Colorado court recognized that the success of the business was highly dependent on the skills and cooperation of Kenfield and the other partner. Evidently hoping to maximize the value of the asset to everyone, the court left Kenfield in charge of both his and his ex-wife's interest. This is all we can reasonably read into the "net proceeds" language of the court.

■ We do not think that the two limitations the court imposed on the wife's interest—control in Kenfield and deferred right to receive the proceeds—changed the state court's underlying purpose to give half of the partnership interest to the wife. The court's settlement decree provided that the ex-wife was entitled to a "full accounting" of the operation of the partnership and access to the partnership books and records. *See supra* note 1. These point to something more than a mere right to future income. We do not believe Kenfield had uncontrolled discretion to leave profits in the partnership and thereby deprive his ex-wife indefinitely of the money to which she was entitled. Kenfield had only the power to leave income in the partnership accounts to meet the capital needs of the partnership. This discretion surely would be subject to the requirement that it be exercised reasonably under a trustee-like responsibility to the coowner ex-wife. That the Colorado courts maintained supervisory control is evidenced by its ruling in 1982 ordering Kenfield to jail for contempt when he did not pay his ex-wife amounts due to her after she sold her rights to the partnership for cash and property.

■ The government also argues that federal statutes command that partnership income be taxed directly to "partners." *See* I.R.C. §§ 701, 702. Perhaps under Colorado partnership law, Kenfield was a partner and his ex-wife was not. But it is federal tax law, not state partnership law, that determines who is a "partner" for federal taxation purposes. *Commissioner v. Tower*, 327 U.S. 280, 287, 66 S.Ct. 532, 535, 90 L.Ed. 670 (1946).

■ Under federal tax law, the basic question is who appropriately can be said to own the partnership interest, such that it is correct to attribute to that person the income earned on the partnership interest. This is not always the person who, under state law, holds the official status of partner. It is standard state partnership law, for example, that a person can receive and properly own a partnership interest without becoming an actual partner. *See, e.g., Bynum v. Frisby*, 73 Nev. 145, 311 P.2d 972, 975 (1957) (outside party receiving twenty percent interest in partnership as compensation for services held to own a

partnership interest, but not, under express provisions in the transfer, to be a partner). In such a case, federal law will tax the true owner of the partnership interest on the income earned by that interest, and not the state law "partners." *See, e.g., Julian L. Hamerslag,* 15 B.T.A. 96, 101–02 (1929) (Acq.) (amounts payable to partners' sister out of partnership profits, under partners' father's will, held not taxable to partners).

Analytically, this result may be squared with the statutory language in two ways: either the owner of the partnership interest *is* a partner for federal tax purposes;[8] or the income paid to the owner of the partnership interest is not partnership income at all, but rather an expense paid out prior to calculating the partnership income taxable to the partners. Either way, the guide is the underlying purpose of the law—to tax the true owners of assets on the income generated by those assets.

The government cites various treasury regulations concerning the precise degree of "control" necessary to be a partner. *See, e.g.,* Tres.Reg. § 1.704–1(e)(1)(iii) (1985). But these are only a response to the evasionary assignment-of-income transfers of partnership interests that taxpayers have attempted over the years. Kenfield's court-ordered property settlement does not involve any evasion.

A better analog to Kenfield's situation is that of a partner/spouse in a community property state, who invests the community property of a nonpartner/spouse into a partnership. In such a case, if the two spouses file separate returns, each spouse will individually report an appropriate portion of the partner/spouse's share of partnership profits and losses. This will occur despite the one spouse's lack of "partner" status. *See* Treas.Reg. § 1.702–1(d) (1980); *see also Black v. Commissioner,* 114 F.2d 355, 358 (9th Cir.1940) (husband contributing to partnership land owned partly by wife under community property laws held to be properly taxed only on income that his portion of land earned). In the present

case, the state law property rights of the ex-wife, which "vested" at her filing for divorce, are similar to those of the nonpartner community property spouse.

The government asserts that transfer to the ex-wife of the right to receive partnership income and assets should not shift the incidence of taxation from Kenfield because it constitutes a mere "assignment of income." Although a taxpayer generally may not escape taxation by voluntarily assigning his or her unreceived income, *Helvering v. Horst,* 311 U.S. 112, 116, 61 S.Ct. 144, 146, 85 L.Ed. 75 (1940), this rule is inapplicable to the present case. Here we deal with an involuntary transfer, not a voluntary transfer, and a division of property between coowners, not an assignment. There is no attempted evasion. The assignment-of-income cases are inapposite.

The government also claims that "equity" dictates that Kenfield should be taxed on the 1977 partnership income because it would be unfair to instead tax the ex-wife. The ex-wife's tax liability is not before this court. But we note that it is possible to be taxed on money to which one has no legal access. The assignment-of-income cases the government presses upon us demonstrate this. *See, e.g., Horst,* 311 U.S. 112, 117–20, 61 S.Ct. 144, 147–48, 85 L.Ed. 75 (1940) (gift of bond coupons valid, but donor still taxed as payments come in to donee). Failed deferred compensation schemes provide a similar example. *See, e.g., United States v. Bayse,* 410 U.S. 441, 447, 93 S.Ct. 1080, 1084, 35 L.Ed.2d 412 (1973) (party receiving services from partnership pays fees into valid retirement trust, not immediately available to any partner; partners still presently taxed on proper share of fee payments).

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

**8.** The federal partnership tax law does not insist that only a person having a right to participation in management or control of the enter-

prise can be taxed. Limited partners who have no such rights receive partnership tax treatment. *See* Treas.Reg. § 301.7701–3(b) (1960).