T.C. Memo. 2009-196

UNITED STATES TAX COURT

MICHAEL AND MARION BALICE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17520-04.                    Filed September 2, 2009.

Michael and Marion Balice, pro sese.

Kathleen K. Raup, for respondent.

MEMORANDUM OPINION

JACOBS, Judge:  This case is before the Court on
respondent's motion for summary judgment (respondent's motion)
pursuant to Rule 121.  For the reasons that follow, we shall
grant respondent's motion.

Respondent determined deficiencies in petitioners' Federal income tax and additions to tax under section 6662(a) for years 1997 and 1998 as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 1997 | $28,924 | $5,784.80 |
| 1998 | 32,449 | 6,489.80 |

The issues for decision are: (i) Whether the periods of limitations on assessment expired before the deficiency notice was mailed; (ii) whether Statewide Financial Trust (Statewide) should be disregarded for Federal income tax purposes and its income for 1997 and 1998 be attributed to petitioners; and (iii) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

All section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners resided in New Jersey when their petition was filed.

## Background

### I. Procedural Background

Respondent mailed petitioners a notice of deficiency for years 1997 and 1998 on June 21, 2004. Thereafter, petitioners challenged respondent's determinations by filing a petition in this Court.

On June 16, 2005, respondent served a request for admissions on petitioners pursuant to Rule 90. Petitioners failed to respond, and the admissions so requested are now deemed admitted pursuant to Rule 90(c).

Respondent filed a motion for summary judgment on October 4, 2005, and petitioners filed a response thereto on November 2, 2005. Before any action was taken on respondent's motion, petitioners filed a petition for bankruptcy under chapter 13 with the U.S. Bankruptcy Court for the District of New Jersey. This Court thereafter issued an order staying all proceedings in this case. Petitioners' bankruptcy case was dismissed on April 19, 2006.

On May 16, 2006, Marion Balice (Mrs. Balice) individually filed a bankruptcy petition under chapter 13 with the U.S. Bankruptcy Court for the District of New Jersey. On March 5, 2007, the U.S. Bankruptcy Court for the District of New Jersey issued an order lifting the automatic stay to allow the case in this Court to proceed. By order dated April 22, 2009, this Court lifted the stay of proceedings, and the matter was assigned to Judge Julian I. Jacobs for disposition.

II.  Factual Background[1]

A.  Michael Balice and His Insurance Business

During the years at issue, Michael Balice (Mr. Balice) was a licensed, self-employed insurance agent.  Before 1994 he conducted his business from petitioners' home in New Jersey.

Mr. Balice received commission income from numerous insurance companies.  He reported the income on Schedule C, Profit or Loss From Business, of Form 1040, U.S. Individual Income Tax Return, for years preceding 1994.  By 1994 petitioners owed significant Federal income tax liabilities dating back to 1984.

B.  The Trusts[2]

In 1994 Mr. Balice attended a trust seminar conducted by Ronald Ottaviano (Mr. Ottaviano).  At that seminar advice and instructions were given with respect to the use of irrevocable trusts in order to obtain tax benefits.  Subsequently, petitioners caused two trusts to be formed:  The Rosewater Trust (Rosewater) and Statewide.

Petitioners executed documents establishing Rosewater on August 28, 1994.  Petitioners thereafter transferred ownership of

_____

[1]The factual background is based on the deemed admissions. See supra pp. 2-3.

[2] Although we sometimes refer to Statewide and Rosewater as trusts, this reference is not meant to imply that they are to be recognized as trusts for Federal income tax purposes.

their home to Rosewater on September 9, 1994, and opened a business checking account for Rosewater on September 22, 1994. Mr. Ottaviano as well as Mr. Balice is listed as a signatory on the Rosewater checking account, but at all relevant times petitioners exercised complete control over this account.  All deposits into the Rosewater checking account during 1997 and 1998 were from petitioners and Statewide, and all checking account statements were sent to petitioners' home address in New Jersey.

Petitioners are the trustees of Rosewater.  They applied for, and obtained, an employer identification number for Rosewater.

Petitioners executed a declaration of pure trust establishing Statewide on August 28, 1994.  No assets were transferred to Statewide at its inception.  Mr. Balice and Mr. Ottaviano opened a checking account for Statewide on September 22, 1994.  As with Rosewater, Mr. Balice and Mr. Ottaviano are listed as signatories on the Statewide checking account but petitioners exercised complete control over the checking account; and statements for the Statewide checking accounts were sent to petitioners' home address in New Jersey.  Statewide's business address was the same as the address of the property which petitioners transferred to Rosewater.  Statewide paid Rosewater "rent" for the use of the property.

Mr. Balice and Mr. Ottaviano were trustees of Statewide. Mrs. Balice was listed as the trustor (creator) of Statewide. The Michael Balice & Marion Balice Family Trust was the sole beneficiary of Statewide, possessing all 200 units of the beneficial interest of Statewide. Mr. Balice exercised complete control over Statewide in 1997 and 1998. He applied for, and obtained, an employer identification number for Statewide.

C. Interaction Between the Trusts and Mr. Balice's Insurance Business

In 1996 Mr. Balice restructured the operation of his insurance business by forming North American Benefits, Inc. (NAB), and North American Marketing, Inc. (NAM). NAB administered employer health insurance plans, classified as "Single Employer Group Health Insurance Plans", and NAM marketed insurance. In 1997 and 1998 Mr. Balice was the president and the sales representative of both NAB and NAM.

NAB had approximately 100 clients during the years at issue, and it received income from all of them. In 1997 and 1998 NAB issued a Form W-2, Wage and Tax Statement, to Mr. Balice reporting $31,200 for 1997 and $24,150 for 1998. NAM made weekly payments to Statewide equal to the commissions generated by Mr. Balice; the payments by NAM were deposited into Statewide's checking account. These deposits represented income earned by Mr. Balice.

During 1997 the weekly deposits into Statewide's checking account totaled $80,400. During 1998 the weekly deposits into Statewide's checking account totaled $87,314. These amounts were not reported on petitioners' individual 1997 and 1998 Federal income tax returns. NAM did not issue a Form W-2 to Mr. Balice for either 1997 or 1998.

In January 1996 Mr. Balice met Alfred Padovano (Mr. Padovano), an accountant, and retained him to prepare income tax returns for petitioners, Statewide, Rosewater, NAB, and NAM. Mr. Padovano reviewed the trusts and questioned their validity. Mr. Balice told Mr. Padovano that the trusts were legal and instructed him to issue Forms 1099-MISC, Miscellaneous Income, to Statewide for the amounts it received during 1997 and 1998.

Petitioners timely filed their 1997 and 1998 income tax returns.[3] On the returns, Mr. Balice reported his Form W-2 income from NAB and a small amount of Schedule C income from his insurance sales business.[4] Mrs. Balice reported her Form W-2 income from her job with Revlon Consumer Corp. in both years.

Statewide filed Forms 1041, U.S. Income Tax Return for Estates and Trusts, for 1997 and 1998. It reported its Form

---

[3]Petitioners filed for and were granted extensions to file for both years. Petitioners filed their 1997 return on Oct. 13, 1998, and their 1998 return on Oct. 8, 1999.

[4]Mr. Balice reported business income of $1,781 in 1997 and $712 in 1998.

1099-MISC income from NAM as gross receipts, and it reported expense deductions, including rent paid to Rosewater for the use of petitioners' home.  As a result, Statewide reported taxable income of $14,563 in 1997 and $6,306 in 1998.

Rosewater filed Forms 1041 for 1997 and 1998.  Rosewater reported the rent it received from Statewide and petitioners for each year on Schedule E, Supplemental Income and Loss.[5]  However, Rosewater claimed expense deductions, including mortgage, repairs, utilities, and taxes, resulting in a loss of $100 in both 1997 and 1998.

Discussion

I.   Period of Limitations

Generally, the Commissioner is limited to 3 years from the date the return was filed to make a valid assessment of income tax.  See sec. 6501(a).  This 3-year period is extended to 6 years if a taxpayer omits from gross income an amount in excess of 25 percent of the amount of gross income stated on the return. Sec. 6501(e)(1).  The Commissioner has the burden of proving that the taxpayer omitted from gross income an amount properly includable therein in excess of 25 percent of the gross income reported on the return.  Davenport v. Commissioner, 48 T.C. 921, 927-928 (1967).

---

[5]Rosewater reported rental income in the amount of $27,750 for 1997 and $28,129 for 1998.

On their 1997 return, petitioners reported $78,241 of gross income. Respondent determined that petitioners omitted $80,400 in gross income. On their 1998 return, petitioners reported $67,146 of gross income. Respondent determined that they omitted $87,314 in gross income. As set forth infra, we uphold respondent's determinations with respect to the amount of omitted income for each year. The amount of omitted income for each year exceeds 25 percent of the amount of gross income petitioners reported on their return. Consequently, the period of limitations on assessment was open until October 2004 with respect to 1997 and until October 2005 with respect to 1998. Respondent issued the notice of deficiency for both years on June 21, 2004, well within the extended 6-year period of limitations.[6] See Meyers v. Commissioner, 435 F.2d 171 (3d Cir. 1970), affg. T.C. Memo. 1968-289; Swanson v. Commissioner, T.C. Memo. 2008-265; Carione v. Commissioner, T.C. Memo. 2008-262.

II. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be

---

[6]Petitioners do not argue and there is no basis in the record for finding that the reporting of gross receipts by Statewide on its income tax return sufficed for purposes of sec. 6501(e)(1)(A)(ii) to apprise respondent of the nature and amount of the income omitted from petitioners' tax returns. See Gouveia v. Commissioner, T.C. Memo. 2004-256.

granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see also Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Matters deemed admitted under Rule 90(c) are conclusively established and may be considered in deciding whether to grant a motion for summary judgment. Morrison v. Commissioner, 81 T.C. 644, 651-652 (1983); Carey v. Commissioner, T.C. Memo. 2003-281; see Marshall v. Commissioner, 85 T.C. 267, 272-273 (1985).

III. Whether Petitioners Omitted Income

Respondent posits that the commission income ostensibly received by Statewide is taxable to Mr. Balice for one or more of the following reasons: (1) Because Statewide is a sham; (2) because of the grantor trust provisions of the Code; and (3) because the transfer of income to Statewide was an assignment of income earned by Mr. Balice. Moreover, respondent asserts that for both 1997 and 1998 Mr. Balice is liable for the self-employment tax due to earnings from his business dealings.

It is axiomatic that taxpayers have a legal right, by whatever means allowable under the law, to structure their transactions so as to minimize their tax obligations. Gregory v. Helvering, 293 U.S. 465, 469 (1935). However, transactions that have no significant purpose other than to avoid tax and do not

reflect economic reality will not be recognized for Federal income tax purposes. See Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Gouveia v. Commissioner, T.C. Memo. 2004-256. And in this regard, we have held that if a transaction has not altered any cognizable economic relationships, we look beyond the form of the transaction and apply the tax law according to the transaction's substance. See Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980); Gouveia v. Commissioner, supra. This principle applies regardless of whether the transaction creates an entity with separate existence under State law. Zmuda v. Commissioner, supra at 720; Gouveia v. Commissioner, supra.

The right to minimize taxes by any means which the law permits "does not bestow upon the taxpayer the right to structure a paper entity to avoid tax when that entity does not stand on the solid foundation of economic reality." Markosian v. Commissioner, supra at 1241. Petitioners' attempts to hide behind a trust which is a sham will not obstruct our view that the insurance commissions ostensibly paid to Statewide are taxable to Mr. Balice. See id. We first consider whether Statewide is a sham. For if it is, we need not consider respondent's other arguments.

A trust may lack economic substance and be a sham for Federal tax purposes if: (A) The taxpayer's relationship, as

grantor, to the property transferred did not differ in any material aspect before and after the creation of the trust; (B) there was no independent trustee; (C) no economic interest passed to other beneficiaries of the trust; (D) the taxpayer was not bound by any restrictions imposed by the trust or by the law of trusts. Id. at 1243-1245.

A.  Petitioners' Unchanged Relationship to the Property Transferred

The deemed admissions show that before the formation of Statewide, Mr. Balice had commission income from his insurance business paid directly to him and he reported it on Schedule C of his income tax returns. During 1997 and 1998 Mr. Balice had his insurance commissions from NAM paid to Statewide and deposited into Statewide's checking account. Through his control over the Statewide checking account, Mr. Balice exercised control over this income.

The deemed admissions also show that when petitioners formed Rosewater, they transferred ownership of their home to Rosewater. After the formation of Rosewater, petitioners continued to live in the home and exercised complete control over it.

Before the formation of the two trusts, Mr. Balice operated his insurance business from his home. After the formation of the trusts, Statewide used petitioners' home as its address. Mr. Balice conducted his business activities and petitioners lived in the home just as before Statewide and Rosewater were created.

In sum, the existence of Statewide did not alter in any substantive way petitioners' relationship to the insurance commissions earned by Mr. Balice.

B. Lack of an Independent Trustee

A trust may be recognized for Federal income tax purposes if it had a bona fide independent trustee who had a meaningful role in the operation of the trust, including the power to prevent taxpayers from acting against the interests of the beneficiaries. See Markosian v. Commissioner, supra at 1244; Swanson v. Commissioner, T.C. Memo. 2008-265.

The deemed admissions show that Statewide had no independent person or trustee who could prevent Mr. Balice from acting against the interests of any other beneficiary by using Statewide's checking account. Although Mr. Ottaviano and Mr. Balice were both identified as trustees, in reality Mr. Ottaviano exercised no control over Statewide or its affairs.

Mr. Balice controlled all aspects of Statewide during 1997 and 1998. He submitted the request for an employee identification number, he hired Statewide's accountant, and he directed the accountant with respect to the preparation of the trust's income tax returns and signed Statewide's 1998 income tax return.[7] Statewide's monthly statements were sent to

---

[7]Statewide's 1997 Federal income tax return was not signed by a fiduciary.

petitioners' home, and Mr. Balice signed each check drawn on Statewide's bank account. Although Mr. Ottaviano had signature authority on the Statewide bank account, he never signed a check or made a withdrawal from the account. Moreover, there is no evidence that Mr. Balice ever consulted Mr. Ottaviano with respect to withdrawals from the account. Rather, Mr. Balice used Statewide's checking account as he saw fit.

In sum, there was no independent trustee who had a meaningful role in operating Statewide.

C. No Economic Interest to Other Beneficiaries of the Trust

The declaration of a pure trust which established Statewide names Mrs. Balice as the trustor of Statewide, and the property contributed to Statewide consisted almost entirely of Mr. Balice's commissions. The certificate evidencing units of beneficial interest (part of the declaration of pure trust) provides that all 200 units of the beneficial interest are owned by the Michael Balice & Marion Balice Family Trust. No other beneficial interest exists. Petitioners were the beneficiaries of their own contributions to Statewide. In sum, no economic interest passed to other beneficiaries of the trust.

D. Petitioners' Unrestricted Use Of the Trust

As noted supra p. 5, Mr. Balice had signatory authority on Statewide's checking account, had no restrictions on his use of the account, and was the only signatory of checks drawn on that

account.  Mr. Balice exercised complete control over Statewide, and the other named trustee, Mr. Ottaviano, was conspicuous by his absence.  No other trustee required or demanded that Mr. Balice operate in any specific way.  Mr. Balice was not restricted in the use of the trust property in any way.

E.  Conclusion

Examination of all four factors for testing the economic reality of Statewide reveals its creation to be nothing more than an exercise in legerdemain.  Consequently, we hold that Statewide should be disregarded for Federal income tax purposes.[8]  In sum, we shall not respect petitioners' attempt to shift their income to a paper entity.  See Markosian v. Commissioner, 73 T.C. at 1243-1245; see also Zmuda v. Commissioner, 79 T.C. at 719-722; Furman v. Commissioner, 45 T.C. 360, 364-366 (1966), affd. 381 F.2d 22 (5th Cir. 1967); Gouveia v. Commissioner, 2004-256.

IV.  Section 6662(a) Accuracy-Related Penalty

Respondent determined that petitioners are liable for a section 6662(a) accuracy-related penalty for 1997 and 1998. Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, inter alia, a substantial understatement of income tax, as provided in section 6662(b)(2), or negligence or disregard of rules or regulations, as provided

---

[8]Respondent has not asked for a determination regarding whether Rosewater should be disregarded for Federal tax purposes.

in section 6662(b)(1).  An understatement of income tax is defined by the Code as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax shown on the return.  Sec. 6662(d)(2)(A).  The understatement is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1)(A).  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Jean Baptiste v. Commissioner, T.C. Memo. 1999-96.

Section 7491(c) provides that the Commissioner has the burden of production with respect to penalties and must come forward with sufficient evidence indicating it is appropriate to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met the burden of production, the burden of proof remains on the taxpayers, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  Id. at 446-447.  Respondent's burden of production is met by proof that petitioners substantially understated their income tax because they failed to properly report the income earned by Mr. Balice and that petitioners were negligent because Mr. Balice intentionally disregarded Mr. Padovano's professional opinion that the trusts' validity was questionable.

Section 6662(a) penalties are inapplicable to the extent petitioners had reasonable cause and acted in good faith. Sec. 6664(c)(1). Petitioners failed to present evidence of either. Indeed, when petitioners' accountant raised concerns about the validity of the trusts, Mr. Balice ignored his concerns and directed him to treat the trusts as legitimate. Given the evidence presented, we conclude that petitioners neither had reasonable cause for their underpayments nor acted in good faith.

To reflect the foregoing,

<u>An order and decision for respondent will be entered</u>.