T.C. Memo. 2015-103

UNITED STATES TAX COURT

MOHAMMAD A. KAKEH AND TONI L. KAKEH, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10728-13L.                          Filed June 2, 2015.

<u>Thomas Kevin Spencer</u>, for petitioners.

<u>John D. Ellis</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioners

seek review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all dollar amounts to the nearest dollar.

[*2] the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien filing.  The parties have filed cross-motions for summary judgment under Rule 121.  The questions for decision are whether certain litigation proceeds were properly taxable in the year received by petitioners and whether the IRS settlement officer (SO) abused his discretion in rejecting their offer-in-compromise (OIC).  There are no disputes of material fact, and we agree with respondent on both points.  We will accordingly grant his summary judgment motion and deny petitioners' summary judgment motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including attached exhibits and affidavits.  See Rule 121(b).  Petitioners resided in Virginia when they petitioned this Court.

In April 2010, after several years of litigation regarding a whistleblower claim, petitioner husband (Mr. Kakeh) executed a settlement agreement with his former employer.  Pursuant to that agreement he received settlement proceeds of $433,084, of which $310,952 was designated compensatory damages and $122,132 was designated compensation for lost wages.  Petitioners used $385,240 of these settlement proceeds to purchase the home in which they now reside.

**[\*3]** Petitioners filed their 2010 Federal income tax return on October 26, 2011, approximately six months late. On this return they included in their gross income the $433,084 of settlement proceeds. However, they paid only a small portion of the $129,251 tax liability reported on that return. On December 5, 2011, the IRS assessed the outstanding tax and additions to tax.

On January 10, 2012, petitioners submitted an OIC on Form 656, Offer in Compromise, proposing to discharge their outstanding tax liability of $131,919 for $3,000. As the reason for this offer, petitioners checked the box captioned "Doubt as to Collectibility." They did not check the box captioned "Exceptional Circumstances (Effective Tax Administration)." If a taxpayer alleges the latter basis for compromise, Form 656 requires that he submit "a written narrative explaining * * * [his] circumstances" and show that "requiring full payment would cause an economic hardship."

Petitioners submitted with their offer a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. This indicated that they had $397,710 of equity in their home as well as a retirement account worth $82,757. They included a letter explaining that Mr. Kakeh had monthly medical expenses of $384 on account of specified health conditions. The IRS Collection Division rejected petitioners' OIC on the ground that the amount

[*4] offered, $3,000, was substantially less than their reasonable collection potential (RCP), which the IRS determined to be $402,085 (after allowing appropriate discounts to their reported asset values). In May 2012 petitioners appealed this rejection of their OIC.

On June 14, 2012, in an effort to collect the assessed tax, the IRS sent petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. On July 13, 2012, petitioners submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. Their OIC appeal and their request for a CDP hearing were consolidated, and on January 22, 2013, petitioners had a face-to-face hearing with an SO from the IRS Appeals Office.

During the CDP hearing petitioners raised both their underlying tax liability for 2010 and the rejection of their OIC. With respect to their underlying tax liability, the SO determined that Mr. Kakeh's settlement proceeds were not excludable from gross income under section 104(a) and that petitioners had properly reported the entire $433,084 for 2010, the year in which they received the money. However, the SO agreed to abate both the late-filing addition to tax and the failure-to-pay-timely addition to tax.

With respect to the OIC, the SO made several concessions in petitioners' favor. He eliminated the value of petitioners' car from his collection analysis; he

[*5] reduced the collection value of petitioners' home; and he accepted all of their monthly expenses as claimed.[2] Despite these favorable adjustments, the SO determined that petitioners had equity of at least $337,291 in their assets, which was sufficient to pay their 2010 tax liability in full.

Mr. Kakeh asked the SO to consider his age (68), the number of his dependents, and his limited retirement income as reasons he should not have to pay the balance due. He did not request consideration of any health problems except to ask that his monthly medical expenses of $384 be taken into account, which the SO agreed to do. The SO suggested a home equity loan or a reverse mortgage as a mechanism for accessing the equity in petitioners' home, which was and continues to be unencumbered. Petitioners refused to consider these options.[3]

Upon review of the administrative file the SO confirmed that petitioners' tax liability for 2010 had been properly assessed and that all other requirements of

---

[2]This last concession was not trivial. Petitioners' claimed household expenses, which they were not asked to substantiate, included $3,126 of monthly housing and utility costs, even though they had no encumbrance on their home.

[3]Petitioners allege in their petition that they subsequently raised their offer from $3,000 to $18,000, with the requisite funds to be withdrawn from Mr. Kakeh's retirement account. The SO in his activity report makes no reference to an increased offer, and petitioners provided no documentary evidence that such an offer was actually made. Because we would reach the same conclusion regardless of whether petitioners' final offer was $3,000 or $18,000, any factual dispute on this point is immaterial to our decision.

**[\*6]** applicable law and administrative procedure had been met. He determined that petitioners were ineligible for an OIC because their assets were sufficient to pay the outstanding liability in full. The SO accordingly closed the case, and on April 18, 2013, the IRS issued a notice of determination rejecting petitioners' proposed OIC and sustaining the notice of tax lien filing. Petitioners timely sought review in this Court, and on January 12, 2015, the parties filed cross-motions for summary judgment.

## Discussion

### A.    Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121 the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The parties agree that there are no material facts in dispute, and we conclude that this case is appropriate for summary adjudication.

**[*7]** B.     Underlying Liability

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case.  The general parameters for such review are marked out by our precedents.  Where the amount of the taxpayer's underlying tax liability is at issue, we review the Commissioner's determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Section 6330(c)(2)(B) permits a taxpayer to challenge in a CDP hearing the existence or amount of his underlying tax liability only where (as is true here) he did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability.  Respondent agrees that petitioners properly raised their underlying tax liability at the CDP hearing.  See sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107, 115 (2007).  We will accordingly review de novo the IRS determination on this point.

Section 61(a) provides that "[e]xcept as otherwise provided * * *, gross income means all income from whatever source derived."  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  Proceeds from settlement of litigation constitute gross income unless the taxpayer proves that such proceeds fall within a specific statutory exclusion.  See Commissioner v. Schleier, 515 U.S.

[*8] 323, 328-337 (1995); Save v. Commissioner, T.C. Memo. 2009-209, 98

T.C.M. (CCH) 218; see also, e.g., sec. 104(a)(2) (excluding from gross income

damages received "on account of personal physical injuries or physical sickness").

Petitioners received $433,084 in settlement proceeds in 2010 and correctly

reported the entire amount as gross income on their 2010 return. Petitioners do

not contend that their settlement proceeds fall under any statutory exemption or

exclusion, nor do they allege any facts that would support such a finding. Their

argument at the CDP hearing was limited to timing. They contended that the

settlement proceeds, partially designated compensation for lost wages, should be

allocated to Mr. Kakeh's compensation for 2004 and be taxed as if he had received

the income in that year.

We disagree. Amounts are included in gross income for the taxable year in

which they are actually or constructively received by a cash basis taxpayer. Sec.

451(a); Green v. Commissioner, T.C. Memo. 2014-23 (finding that taxpayer's

settlement award, received in 2009 but relating to lost wages for 2002 and 2003,

was properly taxable in 2009); Knoll v. Commissioner, T.C. Memo. 2003-277

(applying this principle with respect to a similar award). Petitioners received the

settlement proceeds in 2010, and there is nothing in the record to indicate that they

**[*9]** "constructively" received any portion of the proceeds before 2010. We accordingly sustain respondent's determination on this issue.

## C.     Abuse of Discretion

We review the SO's administrative determinations regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). In deciding whether the SO abused his discretion in sustaining the notice of lien filing, we consider whether he: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioners raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." See secs. 6320(c), 6330(c)(3).

Our review of the record reveals that the SO conducted a thorough review of petitioners' account, determined that the tax had been properly assessed, and verified that other requirements of applicable law and administrative procedure

**[*10]** were followed.  Petitioners' primary contention is that the SO abused his discretion by giving insufficient consideration to their proposed OIC.

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability.  The regulations set forth three grounds for such compromise:  (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income render full collection unlikely.  Id. subpara. (2).  Conversely the IRS may reject an OIC where the taxpayer's RCP is greater than the amount he proposes to pay.  See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd without published opinion, 502 Fed. Appx. (D.C. Cir. 2013).  Appeals officers are generally directed to reject offers substantially below the taxpayer's RCP where the offer is premised, as it was here, on doubt as to collectibility.  See Rev. Proc. 2003-71, 2003-2 C.B. 517.

This Court does not independently review the reasonableness of the taxpayer's proposed collection alternative.  Our review is limited to ascertaining whether the SO's decision to reject that offer was arbitrary, capricious, or without sound basis in law or fact.  Murphy, 125 T.C. at 320.  We do not substitute our judgment

[*11] for that of the SO as to the acceptability of a particular offer. See, e.g., Johnson, 136 T.C. at 488.

Petitioners during 2010 received settlement proceeds of $433,084 and used $385,240 of this money to purchase a home. They do not dispute the SO's determination that they now have at least $337,291 of equity in their assets. By borrowing against these assets, petitioners could have discharged their 2010 tax liability in full; the conversion of cash into real property did not relieve them of this responsibility. The SO did not abuse his discretion by declining petitioners' offer to discharge their $131,919 tax liability for $3,000. See, e.g., Reed v. Commissioner, 141 T.C. 248, 256-257 (2013); Brombach v. Commissioner, T.C. Memo. 2012-265, at *21; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1115 (noting SO's suggestion of a reverse mortgage as a method of satisfying taxpayer's liability without creating economic hardship); Lindley v. Commissioner, T.C. Memo. 2006-229 (finding that SO did not abuse his discretion by rejecting OIC that was $25,535 below taxpayer's RCP), aff'd on this issue sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

Although petitioners based their OIC on doubt as to collectibility, they contend in their summary judgment papers that the SO should have considered an alternative ground for compromise, namely, "promotion of effective tax

**[\*12]** administration." <u>See</u> sec. 301.7122-1(b)(3), Proced. & Admin. Regs.  This ground may justify compromise where full collection "would cause the taxpayer economic hardship," <u>ibid.</u>, by rendering him "unable to pay his * * * reasonable basic living expenses," sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  This may be true, for example, where the taxpayer's medical condition is so severe that his "financial resources will be exhausted providing for care and support during the course of the condition."  Sec. 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs.  Petitioners contend that Mr. Kakeh's health presented a condition of this sort.  In their view, a remand to the IRS Appeals Office is appropriate because the record does not establish that the SO properly considered these matters.

   We are unpersuaded by this argument.  Petitioners did not urge "exceptional circumstances" or "promotion of effective tax administration" as grounds for compromise either on their Form 656 or at the IRS Appeals Office.  Nor did they describe Mr. Kakeh's medical condition as one that could exhaust their financial resources during the near term.  Indeed, until their motion for summary judgment, petitioners mentioned Mr. Kakeh's health only in connection with the $384 monthly cost of his medications, which the SO allowed in full when computing petitioners' RCP.  <u>See</u> <u>Johnson v. Commissioner</u>, T.C. Memo. 2007-29 (holding that the SO properly considered the taxpayer's medical condition by allowing the

**[\*13]** full amount of medical expenses claimed), aff'd in relevant part sub nom. Keller, 568 F.3d 710. This Court will not consider section 6330(c)(2) issues that were not properly raised at the CDP hearing. See Giamelli, 129 T.C. at 115. Because petitioners did not advance "promotion of effective tax administration" or the requisite supporting facts at the CDP hearing, we will not consider these arguments in reviewing the SO's determination. See ibid.; Magana v. Commissioner, 118 T.C. 488, 493 (2002).

Moreover, remand is appropriate only where a new hearing is justified and will be productive. Petitioners offered to compromise their $131,919 tax liability for $3,000 even though they had equity in assets of at least $337,291. They flatly refused to consider any form of borrowing against their unencumbered real estate. Even if we accept their unsupported allegation that they later increased their offer to $18,000, that offer was still a small fraction of their tax liability and of their ability to pay. The purpose of a remand is to facilitate the correction of errors or oversights by the Appeals officer, not to afford a "do over" to taxpayers whose position at the CDP hearing was unreasonable. It appears to us that petitioners are seeking a "do over" here.

Petitioners presented Mr. Kakeh's health to the IRS Appeals Office as a relatively stable condition that required the expenditure of $384 per month on

**[\*14]** medications. If his condition should decline to the point where "it is reasonably foreseeable that * * * [petitioners'] financial resources will be exhausted providing for [his] care and support," see sec. 301.7122-1(c)(3)(i)(A), Proced. & Admin. Regs., petitioners are free to submit a new OIC premised on such facts. However, the SO did not abuse his discretion in rejecting the offer they actually made on the basis of the record that was actually before him.[4]

---

[4]Petitioners included with their summary judgment papers a doctor's note describing Mr. Kakeh's medical condition. This note was not presented to the SO during the CDP hearing, which occurred almost two years previously. Petitioners do not contend that Mr. Kakeh "has experienced a material change in circumstances between the time of the section 6330 hearing and the trial that affects the RCP calculation." See Gurule v. Commissioner, T.C. Memo. 2015-61, at \*35 (finding that the death of the taxpayers' son following issuance of notice of determination caused a "material change in circumstances" affecting their ability to pay). In urging remand, petitioners rely heavily on Anderson v. Commissioner, T.C. Memo. 2013-261, and Pomeroy v. Commissioner, T.C. Memo. 2013-26. Those cases are distinguishable; in each the taxpayer presented very serious medical conditions during the CDP hearing itself as a ground for compromise based on "exceptional circumstances." Cf. Anderson, T.C. Memo. 2013-261, at \*10 (Appeals Office was informed that the taxpayer had been diagnosed with prostate cancer and had had two heart attacks); Pomeroy, T.C. Memo. 2013-26, at \*6 (Appeals Office was informed that the taxpayer had suffered a stroke and was near death). Petitioners advanced no comparable argument or facts to the SO here.

**[*15]** Finding no abuse of discretion in any respect, we conclude that respondent is entitled to judgment as a matter of law and sustain the supplemental notice of determination issued April 18, 2013.  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.