T.C. Memo. 2016-156

UNITED STATES TAX COURT

ABRAHAM J. GEORGE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2065-15.                    Filed August 22, 2016.

<u>Jeffrey B. Melcer</u>, for petitioner.

<u>Marissa J. Savit,</u> for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This case is before the Court on cross-motions for sum-

mary judgment under Rule 121.[1]  For the 2012 taxable year, the Internal Revenue

_____

[1]All statutory references are to the Internal Revenue Code (Code) in effect
for the tax year in issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[*2]** Service (IRS or respondent) determined a deficiency in petitioner's Federal income tax of $8,518 and an accuracy-related penalty of $1,704 under section 6662(a). Respondent has conceded the penalty. The principal issue remaining for decision is whether petitioner may exclude from gross income under section 104(a)(2), as damages received "on account of personal physical injuries or physical sickness," proceeds of $45,000 that he received under a settlement agreement with his former employer. We must also decide the proper tax treatment of the legal fees that petitioner paid to his lawyer. There are no disputes of material fact, and we largely agree with respondent's legal analysis. We will accordingly grant his summary judgment motion and deny petitioner's.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached exhibits and affidavits. See Rule 121(b). Petitioner resided in Texas when he petitioned this Court.

During 2005 and 2006 petitioner was employed as a car salesman at Dana Motors, Ltd. (Dana), a New York automobile dealership. Petitioner alleges that he was repeatedly harassed by his coworkers because of his national origin. Allegedly because of this harassment, he left Dana's employ at the end of 2006. He subsequently secured employment with another automobile dealership.

**[*3]** In 2011 petitioner filed a complaint against Dana and two of his former co-workers in the U. S. District Court for the Eastern District of New York. His complaint sought money damages to "remedy Dana's discrimination in employment against * * * [petitioner] based upon national origin," allegedly in violation of the Civil Rights Act of 1964, 42 U.S.C. secs. 2000e-1 et seq., and comparable provisions of the New York Human Rights Law. His complaint also sought relief under New York labor laws to remedy Dana's "failure to pay compensation owed." He alleged that he had suffered "psychological and physical harms" and been "constructively discharged" from Dana by virtue of a hostile work environment caused by the alleged discrimination. He requested compensatory damages, punitive damages, and liquidated damages.

In May 2012 the parties entered into a Confidential Settlement and General Release Agreement (settlement agreement). Petitioner thereby agreed, in exchange for a payment of $45,000, to release all claims against the defendants, including "claims for back pay, bonuses, commissions, separation allowance, benefits, severance pay, pension, [and] health benefits," as well as any other claims for compensation "with respect to the employment relationship and termination thereof." The settlement agreement did not mention any physical or emotional injury

[*4] suffered by petitioner, nor did it state that any portion of the $45,000 was being paid in consideration of claims for physical or emotional harm.

Zurich American Insurance Co. (Zurich) issued to petitioner's attorney a check for $45,000 pursuant to the settlement agreement. In June 2012 petitioner's attorney issued him a check for $30,000, retaining $15,000 as the agreed-upon legal fees. Zurich issued petitioner for 2012 a Form 1099-MISC, Miscellaneous Income, reporting the payment of $45,000 as settlement proceeds.

Petitioner timely filed his tax return for 2012 but reported no income from the settlement agreement. On October 27, 2014, the IRS timely issued to him a notice of deficiency determining that the $45,000 payment should have been included in gross income. The IRS also determined an accuracy-related penalty.

Petitioner timely petitioned this Court, contending that the $45,000 payment was excludable from gross income under section 104(a)(2). Respondent filed a motion for summary judgment disputing that contention, and petitioner filed a cross-motion for summary judgment. In his motion, respondent conceded the accuracy-related penalty and conceded that petitioner is entitled to a deduction for his legal fees. Assuming that this would be a miscellaneous deduction on Schedule A, Itemized Deductions, respondent computed a revised deficiency of $4,346 for 2012. Respondent also agrees that petitioner is entitled to a net operat-

[*5] ing loss carryback from 2014 to 2012; this will reduce by $681 petitioner's 2012 balance due in the event we rule for respondent.

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Rule 121(a); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). A motion for summary judgment will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The parties agree on all questions of basic fact and have expressed that consensus by filing cross-motions for summary judgment. We conclude that the question presented is appropriate for summary adjudication.

B.    Settlement Proceeds

Section 61(a) defines "gross income" as "all income from whatever source derived." This definition has broad scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). Proceeds from litigation settlements consti-

[*6] tute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion. Schleier, 515 U.S. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209, 98 T.C.M. (CCH) 218.

The exclusion from gross income upon which petitioner relies appears in section 104(a)(2). It provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or agree-ment * * * ) on account of personal physical injuries or physical sickness." Con-gress intended this exclusion to cover all damages that flow from a physical injury or physical sickness. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. For this purpose, "emotional distress shall not be treated as a physical injury or physical sickness." Sec. 104(a) (penultimate sentence).

When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). "The nature of the claim" is typically determined by reference to the terms of the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33, 23 T.C.M. (CCH) 182; Robinson v. Commis-sioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). If the settlement agreement does not ex-

[*7] plicitly state which claims the payment was made to settle, "the intent of the payor * * * is critical." Longoria v. Commissioner, T.C. Memo. 2009-162, 98 T.C.M. (CCH) 11, 15.

The intent of the payor may be determined by taking into consideration all of the facts and circumstances, including the amount paid, the circumstances leading to the settlement, and the allegations in the injured party's complaint. Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250, 90 T.C.M. (CCH) 436; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987). "[T]he nature of the underlying claims cannot be determined from a general release of claims that is broad and inclusive." Ahmed v. Commissioner, T.C. Memo. 2011-295, 102 T.C.M. (CCH) 607, 608 (citing Connolly v. Commissioner, T.C. Memo. 2007-98, 93 T.C.M. (CCH) 1138), aff'd, 498 F. App'x 919 (11th Cir. 2012).

Although petitioner's complaint included a general allegation of "psychological and physical harms," he did not allege with any specificity that he had suffered actual physical injury or physical sickness. His cause of action was based on the Civil Rights Act of 1964, comparable provisions of the New York Human Rights Law, and New York labor law. His complaint sought compensation for "constructive discharge" precipitated by a hostile working environment and dis-

[*8] crimination based on national origin. Although these conditions likely caused petitioner emotional distress, "emotional distress shall not be treated as a physical injury or physical sickness" for purposes of excluding damage awards from gross income. See sec. 104(a) (penultimate sentence).

The settlement agreement does not mention physical injury or physical sickness, much less allocate any portion of the $45,000 to settlement of claims therefor. The only reference in the settlement agreement to petitioner's claims is the general release. Petitioner thereby released all "claims for back pay, bonuses, commissions, separation allowance, benefits, severance pay, pension, [and] health benefits," as well as any other claims for compensation "with respect to the employment relationship and termination thereof." There is no suggestion in this provision that petitioner had made, or was releasing the defendants from, any claims for damages on account of physical injury or physical sickness. See Molina v. Commissioner, T.C. Memo. 2013-226, 106 T.C.M. (CCH) 371, 373-374.

Petitioner contends that his constructive discharge from Dana caused him no economic harm because he earned more income from his new employer in 2007 than he had earned from Dana in 2005 or 2006. Petitioner accordingly concludes that Dana's settlement payment must have been made on account of physical injury or sickness, but the conclusion does not follow from the premise. The alleged

**[*9]** lack of economic harm has no bearing on "the intent of the payor." Longoria, 98 T.C.M. (CCH) at 15. Petitioner's complaint sought lost wages; his economic circumstances in 2007 shed no light on whether Dana intended to compensate him for lost wages. And even if petitioner suffered no economic harm, this fact creates no inference that he was being compensated for physical injuries or physical sickness, as opposed to being compensated for violation of his civil rights, as his complaint alleged.

Finally, petitioner contends that the Federal tax treatment of the settlement proceeds should be governed by New York law. In advancing this contention, he relies on section 6 of the settlement agreement, captioned "Governing Law, Jurisdiction, and Dispute Resolution." It provides that "[t]he rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to principles of conflict of laws." Section 6 goes on to provide that any dispute regarding the agreement "shall be resolved by arbitration." Petitioner asserts that this provision operates to make New York tort law applicable to characterize his claims. He further contends that, under New York tort law, settlement proceeds are presumed to exclude compensation for economic loss and awards for harassment are treated as personal injuries resulting from physical harm.

[*10] Respondent vigorously disputes petitioner's characterization of New York law on these points, but we need not resolve this State law question. The determination of whether an item of income is taxable for Federal income tax purposes is governed by Federal law. See, e.g., Commissioner v. Tower, 327 U.S. 280, 288 (1946); Kenfield v. United States, 783 F.2d 966, 969 (10th Cir. 1986); Killoran v. Commissioner, 709 F.2d 31, 31-32 (9th Cir. 1983), aff'g T.C. Memo. 1981-659, 42 T.C.M. (CCH) 1662, 1663. Although State law determines what rights a person has vis-a-vis a particular item of property, the proper characterization of those rights for Federal income tax purposes is governed by the Internal Revenue Code. See United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722-723 (1985).

The proper characterization of settlement payments under section 104(a)(2) is determined by the analysis set forth above. That analysis makes clear that the $45,000 Dana paid petitioner under the Settlement Agreement was not paid "on account of personal physical injuries or physical sickness." This amount was thus includible in petitioner's gross income for 2012.

C.    Deduction for Attorney's Fees

Section 62(a)(20) allows an above-the-line deduction for attorney's fees and court costs paid by a taxpayer in connection with any action involving a claim of unlawful discrimination. Section 62(e) defines "unlawful discrimination" to in-

**[*11]** clude (among other things) acts that are unlawful under "Section 703, 704, or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2, 2000e-3, or 2000e-16)." These sections refer to unlawful employment discrimination on account of race, color, religion, sex, or national origin. The amount of the deduction cannot exceed the amount includible in the taxpayer's gross income for the taxable year on account of a judgment or settlement resulting from such claim. Sec. 62(a)(20) (last sentence).

Respondent properly concedes that petitioner is entitled to a deduction for his legal fees, but we think he erred in assuming that this would be a Schedule A miscellaneous itemized deduction. Petitioner's complaint alleged discrimination on account of national origin and referenced the relevant provisions of the 1964 Civil Rights Act. The settlement agreement specifically stated that it applied to claims for compensation "with respect to the employment relationship and termination thereof." We conclude that petitioner paid legal fees to secure a settlement of his claim for unlawful employment discrimination, and section 62(a)(20) thus entitles him to an above-the-line deduction of $15,000 for his legal fees.

[*12]     To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.