T.C. Memo. 2018-127

UNITED STATES TAX COURT

MARTHA G. SMITH AND GEORGE S. LAKNER, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8847-12, 25714-12      Filed August 13, 2018.
12293-14.

Edward J. Leyden, for petitioners.

Rachel L. Rollins and Jeffrey E. Gold, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>: With respect to petitioners' Federal income tax for

2007-2011, the Internal Revenue Service (IRS or respondent) determined

---

[1]Cases of the following petitioners are consolidated herewith: Martha G. Smith and George S. Lakner, docket No. 25714-12; and George S. Lakner and Martha G. Smith, docket No. 12293-14.

[*2] deficiencies in tax, additions to tax under section 6651(a)(1), and penalties

under sections 6662(a) and 6663(a),[2] as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalties Sec. 6662(a) | Sec. 6663(a) |
|------|-----------|------------------|-----------|-----------|
| 2007 | $27,339 | $5,621 | $5,468 | -0- |
| 2008 | 106,999 | 25,472 | -0- | $80,249 |
| 2009 | 16,148 | 2,836 | 3,230 | -0- |
| 2010 | 313,914 | 15,448 | -0- | 235,210 |
| 2011 | 163,468 | 17,762 | -0- | 122,601 |

After various concessions (discussed below), the issues for decision are

whether petitioners for various years: (1) received unreported income; (2) are

entitled to deductions claimed on Schedules A, Itemized Deductions, in amounts

greater than respondent has allowed; (3) are entitled to deductions claimed on

Schedules C, Profit or Loss From Business, in amounts greater than respondent

has allowed; (4) are entitled to losses claimed on Schedules E, Supplemental

Income and Loss; (5) are entitled to deductions for net operating losses (NOLs);

(6) are liable for late-filing additions to tax under section 6651(a)(1); and (7) are

---

[2]All statutory references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] liable for accuracy-related penalties.[3]  With minor exceptions, we will sustain respondent's determinations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulations of fact and the attached exhibits are incorporated by this reference.  Petitioners, who are husband and wife, resided in Washington, D.C., when they filed their petitions.

A.    Background

Petitioner George S. Lakner is a distinguished doctor and psychiatrist.  He has held teaching positions at Columbia University, Harvard University, and George Washington University.  Before he began teaching, he had a long career in the U.S. Army, during which he was stationed at various military installations in the United States and overseas.  He has worked with the National Guard, the Veterans Administration (VA), and the National Institutes of Health, all in his capacity as a psychiatrist.

Dr. Lakner joined the Army in 1976 and rose through the ranks to become a colonel.  From 1999 to 2001 he was employed by the VA Medical Center in Loma Linda, California.  During that employment he raised concerns with his superiors

---

[3]In the notice of deficiency for 2008, 2010, and 2011, the IRS asserted, as alternatives to the fraud penalties, accuracy-related penalties under section 6662(a).

**[*4]** that veterans with mental health problems were receiving inadequate care. In November 2001 the VA terminated his employment.

In January 2002 Dr. Lakner filed a Complaint of Employment Discrimination with the Equal Employment Opportunity Commission (EEOC), and the following month he filed an amended EEOC complaint. In both complaints he alleged that he had been the victim of discrimination on the basis of religion, national origin, age, and/or disability. In the alternative he alleged that he had been fired as a reprisal for protected activity in which he had engaged. The record is unclear as to the status of his complaint between 2002 and 2010.

After leaving the VA, Dr. Lakner was deployed to Bosnia, where he was severely injured by a roadside bomb in 2003. While recovering from his wounds he was deployed to Kosovo. He alleges that in Kosovo he was confined for several months in military installations because the Army believed that the VA's termination of his employment rendered his continued military service unlawful.

After returning to the United States Dr. Lakner went on inactive status in 2006 and retired from the Army in 2008. Around that time he started a medical consulting practice that he operated during the years at issue. The record is unclear as to the exact nature of his consulting practice.

**[\*5]**  In January 2010 the EEOC held a hearing on Dr. Lakner's complaints.  During this hearing his attorney represented that the sole issue for adjudication was whether Dr. Lakner's employment had been unlawfully terminated by the VA.  Dr. Lakner testified that he had filed his complaint because he believed the VA had discriminated against him for being Jewish.  The hearing transcript contains no reference to any physical sickness or injury suffered by Dr. Lakner.

In January 2010 Dr. Lakner reached a settlement with the VA.  Under this settlement he received a lump-sum payment of $328,000, representing pecuniary and nonpecuniary damages; $172,000 for attorneys' fees; and $178,552 for accrued annual leave.  The VA reported the latter amount to him on a Form W-2, Wage and Tax Statement.

Petitioner Martha G. Smith was a licensed property manager during 2007-2011.  She was employed by Realtor Cathie Gill, Inc., where she supervised the firm's property management services.  She also worked as an independent property manager.  During some or all of these years petitioners owned, jointly or individually, as many as six rental properties:  four in Washington, D.C., one in California, and one in Connecticut.  Ms. Smith managed these rental properties.

[*6] B.     Petitioners' Tax Returns

Petitioners jointly filed a delinquent Form 1040, U.S. Individual Income Tax Return, for each year at issue. They included in each return a Schedule C. On each Schedule C they reported income and expenses for Dr. Lakner's medical consulting business and Ms. Smith's rental real estate activity, without identifying which items related to which business.

1.     2007 Return

For 2007 petitioners reported negative adjusted gross income (AGI) of $67,106. On their Schedule C they reported gross receipts of $58,400 and total expenses of $130,213, for a net loss of $71,813. The reported expenses were as follows:

| Item | Amount |
| --- | --- |
| Commissions/fees | $2,247 |
| Insurance (other than health) | 9,001 |
| Legal/professional services | 31,369 |
| Office supplies | 862 |
| Travel | 2,389 |
| Meals/entertainment | 1,035 |
| Utilities | 4,441 |
| Other | 78,869 |
| Total | 130,213 |

For 2007 petitioners claimed on Schedule A the following deductions: medical expenses of $4,023, State and local taxes of $22,731, and home mortgage interest of $31,011. They also claimed an NOL deduction of $85,258.

**[*7]** 2. 2008 Return

For 2008 petitioners reported negative AGI of $136,685. On their Schedule C they reported gross receipts of $77,200 and total expenses of $191,350, for a net loss of $114,150. The reported expenses were as follows:

| Item | Amount |
| --- | --- |
| Commissions/fees | $4,162 |
| Insurance (other than health) | 9,900 |
| Legal/professional services | 43,362 |
| Office supplies | 1,247 |
| Travel | 2,257 |
| Meals/entertainment | 864 |
| Utilities | 4,762 |
| Other | 124,796 |
| Total | 191,350 |

For 2008 petitioners claimed on Schedule A the following deductions: medical expenses of $5,720, State and local taxes of $34,210, and home mortgage interest of $58,246. They also claimed an NOL deduction of $99,383.

3. 2009 Return

For 2009 petitioners reported negative AGI of $193,471. On their Schedule C they reported gross receipts of $66,617 and total expenses of $176,121, for a net loss of $109,504. The reported expenses were as follows:

| Item | Amount |
| --- | --- |
| Commissions/fees | $2,911 |
| Insurance (other than health) | 12,026 |
| Legal/professional services | 40,561 |

[*8]

| | |
|---|---|
| Office supplies | 1,440 |
| Travel | 1,999 |
| Meals/entertainment | 845 |
| Utilities | 4,021 |
| Other | 112,318 |
| Total | 176,121 |

For 2009 petitioners claimed on Schedule A the following deductions: medical expenses of $5,703, State and local taxes of $27,136, and home mortgage interest of $35,181. They also claimed an NOL deduction of $162,030.

4.    2010 Return

For 2010 petitioners reported negative AGI of $226,693. On their Schedule C they reported gross receipts of $83,350 and total expenses of $166,544, for a net loss of $83,194. The reported expenses were as follows:

| Item | Amount |
|---|---|
| Insurance (other than health) | $7,902 |
| Legal/professional services | 637 |
| Office supplies | 2,640 |
| Travel | 1,324 |
| Meals/entertainment | 597 |
| Utilities | 3,753 |
| Other | 149,691 |
| Total | 166,544 |

For 2010 petitioners claimed on Schedule A the following deductions: medical expenses of $4,187, State and local taxes of $23,504, home mortgage interest of $39,144, and unreimbursed employee expenses of $700. They also claimed an NOL deduction of $219,855.

**[*9]** 5.    2011 Return

For 2011 petitioners reported negative AGI of $81,344.  On their Schedule

C they reported gross receipts of $20,748 and total expenses of $103,554, for a net

loss of $82,806.  The reported expenses were as follows:

| Item | Amount |
| --- | --- |
| Commissions/fees | $1,900 |
| Insurance (other than health) | 1,763 |
| Office supplies | 4,101 |
| Meals/entertainment | 1,593 |
| Other | 94,197 |
| Total | 103,554 |

For 2011 petitioners claimed on Schedule A the following deductions:

medical expenses of $4,397, State and local taxes of $37,803, and home mortgage

interest of $8,514.  They claimed an NOL deduction of $250,773 and reported on

Schedule E a real estate net loss of $25,000.

6.    IRS Examination

The IRS selected petitioners' 2007-2011 returns for examination.  On the

basis of a bank deposits analysis the IRS determined that petitioners had omitted

rental income from all of their rental properties for 2008 and 2010; had omitted

gross receipts from Dr. Lakner's medical consulting business for 2008 and 2010;

and had omitted a taxable settlement payment from the VA for 2010.  The IRS did

**[*10]** not perform a bank deposits analysis for the other years but determined that petitioners had omitted specific items of gross income for 2007, 2009, and 2011.

The IRS disallowed for lack of substantiation some of the deductions claimed on petitioners' Schedules A and all of the deductions claimed on their Schedules C. After making various computational adjustments that are not at issue here,[4] the IRS determined the deficiencies set forth <u>supra</u> p. 2. The IRS also determined late-filing additions to tax for all five years; accuracy-related penalties for 2007 and 2009; fraud penalties for 2008, 2010, and 2011; and accuracy-related penalties as alternatives to the fraud penalties for the latter three years.

The IRS issued petitioners three timely notices of deficiency--one for 2007, one for 2009, and the third for 2008, 2010, and 2011--setting forth the deficiencies, additions to tax, and penalties noted above. Petitioners timely petitioned this Court for redetermination. We consolidated the three cases for purposes of trial, briefing, and opinion. The cases were partially tried in September 2013, and a further trial was held in December 2016.

---

[4]The IRS made computational adjustments to the taxable portions of petitioners' Social Security income for all years, itemized deductions for 2008-2011, and personal exemptions for 2008. We leave these adjustments to the parties' Rule 155 computations.

**[*11]**                                           OPINION

I.     Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). For the presumption of correctness to attach to a deficiency determination of unreported income, the Commissioner must generally establish a "minimal evidentiary showing" connecting the taxpayer with the income-producing activity, see Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636, or demonstrate that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982). Once the Commissioner makes the required threshold showing, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74 (1986).

To satisfy his burden of production regarding unreported income for 2008 and 2010, respondent introduced bank records obtained during the IRS audit. These records establish that petitioners received unreported income from Dr. Lakner's medical consulting business and from Ms. Smith's rental real estate activity.

**[\*12]** And they establish that Dr. Lakner in 2010 received from the VA a check for $328,000. Respondent has therefore made whatever "minimal evidentiary showing" he might be required to make. His determinations of unreported income are thus entitled to the general presumption of correctness. See Powerstein v. Commissioner, T.C. Memo. 2011-271, 102 T.C.M. (CCH) 497, 506.

Petitioners thus bear the burden of proving by a preponderance of the evidence that respondent's determinations of unreported income are arbitrary or erroneous. See Williams v. Commissioner, 999 F.2d 760, 763 (4th Cir. 1993) (citing Helvering v. Taylor, 293 U.S. at 515), aff'g T.C. Memo. 1992-153; Tokarski, 87 T.C. at 77. Petitioners likewise bear the burden of proving their entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Petitioners do not contend, and they could not plausibly contend, that the burden of proof as to any issue of fact should shift to respondent under section 7491(a).

II. Unreported Income

Section 61(a) defines gross income as "all income from whatever source derived," including income derived from business. Exclusions from gross income are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995);

**[\*13]** <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 429-430 (1955); <u>Helvering v. Clifford</u>, 309 U.S. 331, 334 (1940). A taxpayer must maintain books and records establishing the amount of his or her gross income. <u>See</u> sec. 6001.

When a taxpayer does not keep accurate books and records, the IRS may determine his or her income "under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b); <u>see</u> <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 693 (1989). And where the taxpayer has unexplained bank deposits, the IRS may employ the bank deposits method to estimate income. <u>Estate of Hague v. Commissioner</u>, 132 F.2d 775 (2d Cir. 1943), <u>aff'g</u> 45 B.T.A. 104 (1941); <u>Estate of Mason v. Commissioner</u>, 64 T.C. 651, 657 (1975), <u>aff'd</u>, 566 F.2d 2 (6th Cir. 1977). The IRS has great latitude in reconstructing a taxpayer's income, and the reconstruction "need only be reasonable in light of all surrounding facts and circumstances." <u>Petzoldt</u>, 92 T.C. at 687.

Bank deposits are prima facie evidence of income. The bank deposits method starts with the presumption that all money deposited into a taxpayer's bank account during a given period constitutes taxable income. <u>Price v. United States</u>, 335 F.2d 671, 677 (5th Cir. 1964). This presumption is rebutted to the extent the deposits are shown to include nontaxable amounts, and "the Government must take into account any non-taxable source * * * of which it has knowledge." <u>Ibid.</u>;

[*14] DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

After the IRS reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the IRS' implementation of the bank deposits method was unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994); DiLeo, 96 T.C. at 871-872. The taxpayer may do so by showing (among other things) that certain deposits came from nontaxable sources. See Clayton, 102 T.C. at 645. Nontaxable sources include funds attributable to interaccount bank transfers and returned checks as well as "loans, gifts, inheritances, or assets on hand at the beginning of the taxable period." Burgo v. Commissioner, 69 T.C. 729, 743 n.14 (1978) (quoting Troncelliti v. Commissioner, T.C. Memo. 1971-72).

A. Unreported Income for 2008 and 2010

Finding that petitioners lacked adequate books and records for 2008 and 2010, the revenue agent (RA) employed the bank deposits method to reconstruct their income for those years. After obtaining petitioners' bank statements by issuing summonses to their banks, the RA used the statements (which are part of the record) to prepare schedules listing all deposits. After eliminating nontaxable receipts of which he was aware, and further reducing the total bank deposits by the

**[*15]** income petitioners reported on their returns, the RA prepared and provided to petitioners schedules that determined unreported income. The RA determined that this unreported income was attributable to Dr. Lakner's medical consulting business, Ms. Smith's rental real estate activity, the VA settlement payment, and a separate litigation settlement of an insurance claim.

Petitioners do not challenge the RA's use of the bank deposits method or his determination that their consulting and rental income was taxable. Rather, they contend that he misapplied the bank deposits method by: (1) failing to exclude the VA settlement payment, (2) failing to exclude other allegedly nontaxable amounts, and (3) mischaracterizing certain receipts as rental income.

### 1. VA Settlement Payment

Petitioners assert that at least part of the VA settlement payment they received in 2010 was nontaxable because it represented damages for the physical injury Dr. Lakner sustained in Bosnia in 2003. Proceeds from litigation settlements constitute gross income unless the taxpayer proves that the proceeds fall within a specific statutory exclusion. Schleier, 515 U.S. at 328-337; Save v. Commissioner, T.C. Memo. 2009-209, 98 T.C.M. (CCH) 218, 218. The exclusion from gross income upon which petitioners rely appears in section 104(a)(2). It provides that gross income does not include damages received "on account of personal physical

[*16] injuries or physical sickness." For this purpose, "emotional distress shall not be treated as a physical injury or physical sickness." Sec. 104(a) (penultimate sentence).

When damages are received under a settlement agreement, the nature of the claim that was the actual basis for the settlement determines whether the damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). "The nature of the claim" is typically determined by reference to the terms of the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). If the settlement agreement does not explicitly state which claims the payment was made to settle, "the intent of the payor * * * is critical." Longoria v. Commissioner, T.C. Memo. 2009-162, 98 T.C.M. (CCH) 11, 15; see George v. Commissioner, T.C. Memo. 2016-156, 112 T.C.M. (CCH) 239, 240.

The intent of the payor may be determined by considering all relevant facts, including the amount paid, the circumstances leading to the settlement, and the allegations in the injured party's complaint. Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987). "[T]he nature of underlying

[*17] claims cannot be determined from a general release that is broad and inclusive." Ahmed v. Commissioner, T.C. Memo. 2011-295, 102 T.C.M. (CCH) 607, 608, aff'd, 498 F. App'x 919 (11th Cir. 2012).

In his EEOC complaints Dr. Lakner alleged that the VA had terminated his employment because of his Jewish ancestry and religion and as reprisal for his advocacy on behalf of veterans with psychological illness. His original and amended complaints were filed in 2002. They did not mention (nor could they possibly have mentioned) the injury he sustained in 2003.

The EEOC hearing was held in 2010. During that hearing Dr. Lakner's attorney stated that the sole issue for adjudication was whether Dr. Lakner's employment with the VA had been unlawfully terminated in 2001. Neither his complaint nor the hearing transcript contains any reference to physical injury or physical sickness.

The settlement agreement between Dr. Lakner and the VA states that it resolves all matters he had raised in his complaint. The VA agreed to pay $328,000 in pecuniary and nonpecuniary damages, make a lump-sum payment for accrued annual leave, and pay Dr. Lakner's attorney's fees. There is no mention of any physical injury he had suffered. In exchange for the VA's payments, Dr. Lakner agreed to "withdraw, in their entirety, all discrimination complaints." Apart from

[*18] Dr. Lakner's testimony at trial, there is no evidence that the EEOC settlement payment represented compensation for the injuries he sustained in Bosnia.

Dr. Lakner contends that the injury he sustained in Bosnia was exacerbated by his alleged confinement in Kosovo and that the VA settlement agreement had "linkage" to those events. But in deciding whether a settlement payment is excludable under section 104(a)(2), the crucial question is whether the settlement amount was actually paid to redress a physical injury. See Molina v. Commissioner, T.C. Memo. 2013-226, 106 T.C.M. (CCH) 371, 373. Dr. Lakner alleged no physical injury in his EEOC complaints, and the settlement agreement clearly states that the VA settled the case in consideration of his agreement to withdraw "all discrimination complaints" he had made. Giving primacy to the terms of the settlement agreement and to "the intent of the payor," Longoria, 98 T.C.M. (CCH) at 15, we find that the VA intended to settle, and did settle, Dr. Lakner's claims of discrimination based on religion, national origin, and reprisal.[5] We accordingly

---

[5]Dr. Lakner also agreed to waive "his right to pursue future causes of action against the Agency based on facts in existence as of the date of * * * this Agreement." We have found such general, prospective waivers inadequate to show that a settlement payment was made for a physical injury. See Devine v. Commissioner, T.C. Memo. 2017-111, 113 T.C.M. (CCH) 1496, 1499. In any event, even if petitioners could show that some portion of the $328,000 settlement was attributable to physical injury, they have offered no evidentiary basis for calculating that portion and would thus fail to meet their burden of proof.

[*19] hold that the $328,000 VA settlement payment was not received "on account of personal physical injuries or physical sickness" and is therefore not excludable from gross income under section 104(a)(2).

### 2. Other Income for 2008 and 2010

During 2008 and 2010 petitioners maintained 10 to 12 personal bank accounts into which they made deposits. When performing his bank deposits analysis, the RA subtracted from petitioners' total deposits for 2008 and 2010 nontaxable transfers of $216,357 and $523,795, respectively. These calculations yielded net taxable deposits of $305,327 and $885,684, respectively. From these sums he subtracted the gross income petitioners had reported on their 2008 and 2010 tax returns, i.e., $179,405 and $186,420, respectively. This yielded net unreported income of $125,922 for 2008 and $699,264 for 2010. Using information in the bank records, the RA allocated this unreported income into three categories (the $328,000 VA settlement payment is included in the Schedule C total for 2010):

| Item | 2008 | 2010 |
|------|------|------|
| Litigation settlement proceeds | -0- | $275,000 |
| Medical consulting (Schedule C) | $92,887 | 334,175 |
| Rental real estate (Schedule E) | 33,035 | 90,089 |
| Total | 125,922 | 699,264 |

[*20] The litigation proceeds of $275,000 reflected an insurance settlement petitioners received in 2010 following a casualty loss to one of their rental homes. This loss was caused by a neighbor who did unauthorized work on his property, resulting in a landslide that damaged the retaining wall on petitioners' property. Respondent conceded in his post-trial brief that these insurance proceeds were excludable from gross income and hence that the $275,000 was a nontaxable deposit. Petitioners' unreported income for 2010, including the VA settlement payment, is thus reduced to $424,264.

Petitioners have supplied no credible evidence that would justify eliminating any other bank deposits as nontaxable items. Petitioners have stipulated that they did not receive any gifts or inheritances during these years. Contrary to their contention, the RA correctly accounted for interaccount transfers of $158,443 for 2008 and $76,122 for 2010. Petitioners assert that a $719 check that Dr. Lakner received from the VA in 2008 was excludable from gross income under section 104, but they provided no credible evidence that the VA made this payment on account of disability, physical injury, or physical sickness.

There is likewise no factual basis for petitioners' assertion that the RA erred in characterizing certain bank deposits as rental income. Each deposit that the RA characterized as rent corresponded to a check that named one or both petitioners as

[*21] payees and either (1) bore the notation "rent" on the memo line or (2) showed an address matching the address of one of petitioners' rental properties. Petitioners assert that the RA double-counted certain deposits by treating them as rent, but they have supplied no evidentiary support for that assertion.

In sum, we find that petitioners have failed to carry their burden of showing error in the RA's bank deposits analysis for 2008 or 2010, apart from the erroneous inclusion of the $275,000 insurance settlement as conceded by respondent. We accordingly find that petitioners had unreported income of $125,922 for 2008 and $424,264 for 2010, allocable between Schedule C and Schedule E as shown on the table above. See supra p. 19.

B.    Unreported Income for 2007, 2009, and 2011

For 2007 petitioners concede that they failed to report taxable interest income of $34,357. For 2011 respondent concedes that a $28,735 distribution petitioners received from an IRA account was not includable in gross income. We thus sustain respondent's determination of unreported income for 2007, but not for 2011.

For 2007 and 2009 petitioners contend that the RA erred in allocating income between Schedule C and Schedule E. For both years petitioners lumped together, on a single Schedule C, the income and expenses connected with Dr. Lak-

[*22] ner's medical consulting business and the income and expenses connected with Ms. Smith's rental real estate activity. The latter amounts should have been reported on Schedule E. Given the disarray in petitioners' recordkeeping, untangling the two streams of income and expenses was no easy task. Using information in petitioners' bank records, the RA determined that $58,400 of Schedule C gross receipts for 2007 and $66,617 of Schedule C gross receipts for 2009 should be recharacterized as rental income and transferred to Schedule E. Petitioners have not shown that this determination was arbitrary or erroneous.

III. Schedule A Deductions

For 2008 petitioners claimed a deduction of $58,246 for home mortgage interest expense. The IRS reduced the allowable deduction to $35,669, determining that petitioners had failed to substantiate the remainder. Petitioners introduced no credible evidence to support a deduction larger than the IRS has allowed.

For 2008, 2010, and 2011 petitioners deducted State and local taxes of $34,210, $23,504, and $37,803, respectively. The IRS in the notice of deficiency disallowed these deductions in their entirety. In his post-trial brief respondent conceded that petitioners are entitled to State tax deductions of $4,197 for 2008, $4,120 for 2010, and $32,390 for 2011. Petitioners introduced no credible evi-

**[\*23]** dence to substantiate deductions for State taxes in amounts larger than respondent has conceded.[6]

IV.    Schedule C Deductions

Deductions are a matter of legislative grace.  The taxpayer bears the burden of proving that reported business expenses were actually incurred and were "ordinary and necessary."  Sec. 162(a); Rule 142(a); INDOPCO, Inc., 503 U.S. at 83.  The taxpayer also bears the burden of substantiating expenses underlying his claimed deductions by keeping and producing records sufficient to enable the IRS to determine his correct tax liability.  Sec. 1.6001-1(a), (e), Income Tax Regs.  The failure to keep and present such records counts heavily against a taxpayer's attempted proof.  Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.  In certain circumstances the Court may approximate the amount of an expense if the taxpayer proves that it was incurred but cannot substantiate the exact amount.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  But the taxpayer must provide some basis for such an estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

_____

[6]Petitioners contend that "there is a substantial possibility" that their disallowed Schedule A expense deductions were attributable to their rental properties. As noted in the text, they supplied no credible evidence to substantiate the expenses, regardless of the schedule on which they might properly be reportable.

**[\*24]** Section 274(d) imposes strict substantiation requirements for deductions claimed for expenses of traveling (including meals and lodging while away from home), gifts, and entertainment. No such deduction is allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. Sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985). A court may not apply the <u>Cohan</u> rule to approximate expenses covered by section 274(d). <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827-828 (1968), <u>aff'd per curiam</u>, 412 F.2d 201 (2d Cir. 1969).

For 2007-2011 petitioners claimed deductions on Schedule C in the respective amounts of $130,213, $191,350, $176,121, $166,544, and $103,554. With minor exceptions, the IRS disallowed these deductions for lack of substantiation or because they constituted "personal, living, or family expenses." <u>See</u> sec. 262(a). We sustain these determinations subject to certain concessions by respondent as noted below.[7]

---

[7]Petitioners lumped together on their Schedules C expenses allegedly incurred both in Dr. Lakner's medical consulting business and in the rental real estate activity. To the extent that petitioners have substantiated expenses properly reportable on Schedule E rather than Schedule C, we have noted that in the text below.

**[*25]** A.     <u>2007 and 2009</u>

To substantiate their expenses for 2007 and 2009, petitioners provided at trial numerous receipts and invoices, order confirmation emails, canceled checks, bank statements, and handwritten summaries.  Because these documents were highly disorganized, we instructed petitioners to attach to their post-trial briefs spreadsheets linking each claimed deduction to specific substantiating documents in the record.  The spreadsheets petitioners supplied did not do this in a helpful or plausible way.  We will briefly address each category of expenses petitioners claim to have paid:

• <u>Meals, Entertainment, and Business Gifts</u>:  Petitioners claimed deductions for grocery shopping, airline and car rental expenses, dining out at numerous restaurants, and alleged business gifts in the form of wine, desserts, flowers, and gift cards.  These expenses are subject to the strict substantiation requirements of section 274(d).  <u>See</u> <u>Sanford</u>, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs.  Petitioners did not satisfy these requirements because they failed to supply any credible evidence establishing the time, place, and/or business purpose for these expenditures.

• <u>Professional Services</u>:  Petitioners claimed deductions for legal fees, appraisal fees, and accounting fees.  Such expenses are deductible on Schedule C

[*26] only if incurred in connection with the taxpayer's trade or business. Kenton v. Commissioner, T.C. Memo. 2006-13; Test v. Commissioner, T.C. Memo. 2000-362, aff'd, 49 F. App'x 96 (9th Cir. 2002). As purported substantiation petitioners supplied canceled checks or invoices showing lawyers or other professionals as payees. Petitioners have provided no evidence that would enable the Court to determine whether the claimed payments had any connection with Dr. Lakner's consulting business or with Ms. Smith's rental real estate activity. We therefore sustain the disallowance of all deductions in this category.

• Professional and Licensing Fees: To substantiate these expenses petitioners offered canceled checks made out to the D.C. Treasurer and various medical associations. We sustain disallowance of all deductions in this category because petitioners have failed to prove that the canceled checks corresponded to ordinary and necessary expenses of Dr. Lakner's consulting business.

• Maintenance: Respondent has conceded that petitioners have substantiated $100 of deductible maintenance expenses for 2007. The IRS properly disallowed deductions for the other reported expenses in this category because they were personal, were incurred outside the years at issue, or were not shown to have any connection with Dr. Lakner's consulting business or with petitioners' rental properties.

[*27] • <u>Miscellaneous Property-Related Expenses</u>: Petitioners submitted a large stack of canceled checks, receipts, and invoices showing payments to numerous utility companies, service companies, insurance companies, and retail stores (such as Macy's, Home Depot, and Bed Bath and Beyond). Petitioners do not contend that any of these expenses was properly deductible on Schedule C. Respondent has conceded that petitioners are entitled to a Schedule E deduction of $532 for improvements to a rental property in 2009. We did not find credible petitioners' testimony that any of the other reported expenses related to their rental properties as opposed to their personal residence. Petitioners have not carried their burden of proving that these expenses were properly deductible. <u>See</u> sec. 262; <u>Tokarski</u>, 87 T.C. at 77.

    • <u>Property Tax and Mortgage Interest</u>: As purported substantiation for Schedule C expenses in 2007 and 2009, petitioners' spreadsheet listed real property taxes and home mortgage interest that they had separately claimed as itemized deductions on Schedule A. The IRS allowed all of the itemized deductions that petitioners claimed for 2007 and 2009. Petitioners have failed to substantiate any deductions for property taxes or interest beyond the amounts the IRS allowed as itemized deductions.

[*28] • <u>IRA Contributions</u>:  As purported substantiation for their Schedule C expenses, petitioners' spreadsheets listed IRA contributions of $2,000 for 2007 and 2009.  Petitioners separately claimed on line 32 of their Form 1040 for each year, and the IRS allowed, an IRA contribution deduction of $2,000.  Petitioners have failed to prove that they are entitled to IRA deductions larger than those respondent has allowed.

• <u>Charitable Contributions</u>:  As purported substantiation for their Schedule C expenses, petitioners' spreadsheet listed charitable contributions of $2,430 for 2007.  Petitioners for 2007 separately claimed on Schedule A, and the IRS allowed, a charitable contribution deduction of $2,100.  Petitioners have failed to prove that they are entitled to a charitable contribution deduction for 2007 in excess of the amount respondent allowed on Schedule A.

• <u>Other Expenses</u>:  On their spreadsheet for 2007 petitioners listed an expense of $159 for "professional training."  Respondent conceded that petitioners substantiated $40 of this expense.  We find that they have not substantiated the remainder.

**[\*29]** B.    2008, 2010, and 2011

For 2008, 2010, and 2011, the IRS disallowed most of petitioners' claimed

Schedule C expense deductions, determining that they had substantiated only the

following:

| Item | 2008 | 2010 | 2011 |
|------|------|------|------|
| Travel | $2,257 | $1,324 | -0- |
| Meals/entertainment | 864 | 957 | $1,593 |
| Total | 3,121 | 2,281 | 1,593 |

Petitioners have produced no invoices, bank statements, credit card state-

ments, or other credible documentation to substantiate the existence or amount of

any other Schedule C expenses. We reject their request that we estimate their

deductible expenses because they have provided no evidentiary basis on which we

could base such an estimate. See Norgaard v. Commissioner, 939 F.2d 874, 879

(9th Cir. 1991) (requiring the taxpayer to present credible evidence from which the

Court can make an estimate under the Cohan rule), aff'g in part, rev'g in part T.C.

Memo. 1989-390. We find that petitioners have not substantiated Schedule C

expenses for 2008, 2010, or 2011 in excess of the amounts respondent has

allowed.

[*30] V.     Schedule E Loss

On their Schedule E for 2011 petitioners reported income of $13,045 from two rental properties and negative income of $38,045 from three rental properties, producing an alleged rental real estate loss of $25,000. They reported the full amount of that loss on line 17 of their Form 1040. In the notice of deficiency the IRS disallowed any deduction for that loss, stating: "Your rental loss was disallowed because * * * you are not a real estate professional and your modified adjusted gross income is over $150,000."

The Code allows an individual who actively participates in a rental real estate activity to deduct against ordinary income up to $25,000 of losses from that activity if AGI is less than $150,000. See sec. 469(i)(1), (2), and (3). Respondent concedes that Ms. Smith actively participated in the rental real estate activity during 2011. In light of the adjustments to income that we have sustained, however, petitioners' AGI for 2011 was substantially in excess of $150,000. Thus, assuming arguendo that petitioners have substantiated their claimed real estate loss, they cannot deduct any portion of it unless Ms. Smith during 2011 was a "real estate professional," i.e., a taxpayer engaged in a "real property business" within the meaning of section 469(c)(7).

**[\*31]** Section 469(a) generally disallows a current deduction for a "passive activity loss" incurred by an individual. Section 469(c) defines "passive activity" to include an activity involving a trade or business in which the taxpayer does not "materially participate" and "any rental activity" regardless of whether the taxpayer materially participates. Sec. 469(c)(1), (2), (4). But section 469(c)(7) provides that the rental real estate activity of a real estate professional is not per se passive. See Kosonen v. Commissioner, T.C. Memo. 2000-107, 79 T.C.M. (CCH) 1765, 1767; sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. If a real estate professional materially participates in a rental real estate activity, that activity is treated as non-passive, and the section 469(a) disallowance does not apply. See Shiekh v. Commissioner, T.C. Memo. 2010-126, 99 T.C.M. (CCH) 1526, 1528; Fowler v. Commissioner, T.C. Memo. 2002-223, 84 T.C.M. (CCH) 281, 284; sec. 1.469-9(e)(1), Income Tax Regs.

To qualify as a real estate professional, a taxpayer must (among other things) "perform[] more than 750 hours of services during the taxable year in real property trades or businesses in which * * * [she] materially participates." Sec. 469(c)(7)(B)(ii). The taxpayer must satisfy the 750-hour requirement personally; participation in the real estate activity by the taxpayer's spouse is not attributed to the taxpayer for this purpose. Oderio v. Commissioner, T.C. Memo. 2014-39, 107

[*32] T.C.M. (CCH) 1214, 1215; sec. 1.469-9(c)(4), Income Tax Regs. Moreover, "personal services performed as an employee shall not be treated as performed in real property trades or businesses" unless "such employee is a 5-percent owner * * * in the employer." Sec. 469(c)(7)(D)(ii).

During 2011 Ms. Smith was employed by Realtor Cathie Gill, Inc., where she supervised the firm's property management services. There is no evidence that she held a 5% ownership interest (or any ownership interest) in that firm. Her services rendered as an employee therefore do not count in determining whether she met the 750-hour requirement.

Petitioners have produced no documentary evidence of any kind to substantiate the number of hours that Ms. Smith or Dr. Lakner devoted to their rental properties. Ms. Smith did not testify at trial. Dr. Lakner testified that his wife spent 500 to 600 hours annually, and that he spent another 1,000 to 1,200 hours annually, managing those properties. There was no documentary support for these assertions, which were at best "ballpark guesstimates," and we did not find Dr. Lakner's testimony credible. See Moss v. Commissioner, 135 T.C. 365, 369 (2010); Tokarski, 87 T.C. at 77. Finding as we do that neither petitioner was a real

**[*33]** estate professional during 2011, we sustain respondent's disallowance of the $25,000 Schedule E loss deduction petitioners claimed for that year.[8]

VI.    NOLs

On line 21 of their 2007-2011 returns, captioned "Other Income," petitioners claimed "net operating loss carryover[s]" in the following amounts:

| Year | NOL |
|------|-----|
| 2007 | $85,258 |
| 2008 | 99,383 |
| 2009 | 162,030 |
| 2010 | 219,855 |
| 2011 | 250,773 |

Respondent disallowed these NOL deductions entirely, and properly so.

A taxpayer may generally deduct, as an NOL for a taxable year, an amount equal to the sum of the NOL carryovers and carrybacks to that year. Sec. 172(a). A taxpayer claiming an NOL deduction must file with his return "a concise statement setting forth the amount of the * * * [NOL] deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the * * * [NOL] deduction." Sec. 1.172-1(c), Income Tax Regs.

---

[8]Petitioners did not claim any rental real estate losses on their returns for 2007-2010 and did not include a Schedule E in any of those returns. They have not substantiated, for any of those years, rental real estate expenses in excess of the Schedule E income that respondent has determined. Thus, they are not entitled to any deductions for real estate losses for 2007, 2008, 2009, or 2010.

**[*34]** Petitioners bear the burden of establishing both the existence of NOLs for prior years and the NOL amounts that may properly be carried forward to the years at issue. See Rule 142(a); Keith v. Commissioner, 115 T.C. 605, 621 (2000).

The $85,258 NOL deduction petitioners claimed for 2007 allegedly represented the carryforward of losses petitioners had incurred in 2004-2006. Petitioners did not attach to their 2007 return the explanatory statement required by the regulations. They offered no evidence that they had sustained bona fide losses during 2004-2006, apart from submitting copies of the tax returns on which they reported those losses. Merely claiming a loss does not substantiate it. See Coburn v. Commissioner, T.C. Memo. 2014-113, 107 T.C.M. (CCH) 1551, 1558 ("A taxpayer's return is merely a statement of the taxpayer's position and cannot be used to substantiate a deduction."); see also Gould v. Commissioner, 139 T.C. 418, 447 (2012), aff'd, 552 F. App'x 250 (4th Cir. 2014).

The NOL carryforward deductions petitioners claimed for 2008-2011 resulted from the $85,258 NOL carryforward from 2004-2006 (to which they were not entitled) and the negative AGI they reported for 2007-2010 (in the aggregate amount of $623,955). As a result of the adjustments we have sustained, requiring inclusion of unreported income and disallowing petitioners' claimed Schedule C loss deductions, petitioners will have substantial positive AGI for each year at is-

**[\*35]** sue. Because they have no operating losses to carry forward, the IRS properly disallowed all of their claimed NOL deductions.

## VII. Additions to Tax

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. The parties have stipulated that petitioners' 2007-2011 returns were filed late. Respondent has thus met his burden of production under section 7491(c).

A taxpayer who files his return late is liable for the section 6651(a)(1) addition to tax unless he shows that his failure was due to reasonable cause and not due to willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioners first assert that Dr. Lakner's deployment overseas constitutes reasonable cause for their failure to file timely. But Dr. Lakner returned to the United States from overseas deployment in 2006. Petitioners have offered no cogent explanation why his overseas military service during 2006 and prior years rendered them unable to file timely returns for 2007-2011, the first of which was not due for filing until April 2008.

Alternatively, petitioners contend that "significant health problems" made it impossible for them to file their returns on time. Petitioners introduced no cred-

**[\*36]** ible evidence to support this assertion. They insisted throughout the trial that they actively engaged in a medical consulting business and a rental real estate activity during the tax years at issue. Their returns for each year were prepared by a certified public accountant (CPA) at "Physicians' Tax Service." If ill health did not prevent petitioners from managing their commercial affairs, we find no basis for concluding that ill health prevented them from furnishing information timely to their return preparer. See Poppe v. Commissioner, T.C. Memo. 2015-205, 110 T.C.M. (CCH) 401, 406-407 (rejecting ill health defense where taxpayer as a securities trader "engag[ed] in activities that required a high degree of concentration and ability to analyze and organize information"); Hardin v. Commissioner, T.C. Memo. 2012-162, 103 T.C.M. (CCH) 1861, 1862-1863 (rejecting ill health defense where taxpayer was able to manage his business affairs, including managing two rental properties, selling one of them, and being employed full time).

In sum, we conclude that petitioners have failed to carry their burden of proving that they had reasonable cause for failing to file their 2007-2011 returns on time. We thus sustain the addition to tax under section 6651(a)(1) for each year.

**[\*37]** VIII.  <u>Penalties</u>

In his post-trial brief respondent conceded that petitioners are not liable for fraud penalties under section 6663, as the IRS had determined in the notice of deficiency for 2008, 2010, and 2011.  But respondent contends that petitioners are liable for accuracy-related penalties under section 6662(a) for all five years.  We agree with that submission.

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny substantial understatement of income tax."  Sec. 6662(a) and (b)(1) and (2).  Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws.  Sec. 6662(c).  An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).

Under section 7491(c) respondent bears the burden of production with respect to the liability of any individual for any penalty.  <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  Respondent has satisfied his burden of production as to negligence by showing that petitioners for each year failed to report all of their taxable income and failed to maintain any meaningful books and records for their business activities.  <u>See</u> sec. 1.6662-3(b)(1), Income Tax Regs.

[*38] In Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that respondent's burden of production under section 7491(c) also includes establishing compliance with section 6751(b). That section requires that penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination." See Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42.

For 2007 and 2009 the record includes copies of Civil Penalty Approval Forms signed by the immediate supervisor of the revenue agent who examined petitioners' returns, approving imposition of section 6662(a) penalties against petitioners for those years. For 2008, 2010, and 2011 the record includes copies of a Civil Penalty Approval Form, signed by the immediate supervisor of the revenue agent who examined petitioners' returns, approving imposition of section 6663 fraud penalties and (in the alternative) section 6662(a) accuracy-related penalties against petitioners for those years. We accordingly find that respondent has satisfied his burden of production to show compliance with section 6751(b).

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect thereto. See sec. 6664(c)(1). The taxpayer generally bears the burden of proving reasonable

[*39] cause and good faith.  Higbee, 116 T.C. at 446.  Reasonable cause can be shown by good-faith reliance on the advice of a qualified tax professional.  Sec. 1.6664-4(b)(1), (c), Income Tax Regs.  Whether the taxpayer actually relies on the advice and whether such reliance is reasonable present questions of fact.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(c)(1), Income Tax Regs.  For reliance to be reasonable, the taxpayer must (among other things) have provided "necessary and accurate information to the adviser."  Neonatology Assocs., P.A., 115 T.C. at 99.

Petitioners contend that they made a good-faith effort to determine their Federal income tax liabilities correctly because they hired a CPA to prepare their returns.  Petitioners did not call the CPA to testify at trial.  They offered no evidence to show that he was a competent adviser or that they actually relied on him in good faith.

All of the adjustments we have sustained in this case involve unreported income and unsubstantiated deductions.  Assuming arguendo that petitioners' CPA was competent, it is obvious that petitioners did not supply him with all "necessary and accurate information" needed to prepare their 2007-2011 returns properly.  Ibid.  We conclude the "reasonable cause" exception does not apply and that all of the underpayments (as redetermined) are attributable to negligence.  Al-

**[\*40]** ternatively, in the event the Rule 155 computations show that the various understatements of income tax exceed the greater of $5,000 or 10% of the amounts required to be shown on the respective returns, we conclude that those underpayments are attributable to substantial understatements of income tax for which reasonable cause has not been shown.

To reflect the foregoing,

<u>Decisions will be entered under</u>

<u>Rule 155</u>.